CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5044
    George.Hageman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KEVIN ELISEO CHAVEZ,<br><br>    Defendant. | **CASE NO. 3:23-CR-00057-JSC**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court:         Hon. Jacqueline Scott Corley<br>Hearing Date:  September 24, 2025<br>Hearing Time:  10:00 a.m. |

## I. INTRODUCTION

Kevin Chavez is a former participant in the Conviction Alternatives Program (CAP). CAP is meant for high-risk defendants, and Chavez fits that mold: he is a 40-year-old man with a history of substance abuse and an extensive criminal history (category VI). Most recently, on July 31, 2022, while still on post-release community supervision, he caused a multi-car collision in San Francisco and brandished a firearm at a witness who tried to stop him from fleeing the scene. On December 8, 2022, during a search warrant execution in connection with that hit-and-run, Chavez was caught with a stolen Glock 27 with an extended magazine.

Like other CAP participants, Chavez's path through the program was sometimes rocky. He has failed multiple drug and alcohol tests and missed multiple treatment sessions. *See* PSR ¶¶ 5, 7, 8. Views differ on just how successful or unsuccessful he was during his approximately eight months in the program. What the parties do agree on, however, is that his injury from a car accident in July 2024 was extremely serious and severely inhibited his ability to continue in CAP and show improvement over time. Neither the car accident nor his subsequent removal from CAP are his fault.

We do not know how Chavez would have done had he continued in CAP. Many participants start rocky, given that the program is designed for high-risk defendants in the first place, yet nevertheless improve over time. If he had successfully completed CAP, there is a decent chance the government would have recommended a non-custodial sentence—this is speculative because there is no plea agreement in this matter. If he had failed out of CAP, there is a decent chance the government would have recommended a guidelines range sentence given his lengthy criminal history and the aggravating facts from his instant offense. But here, Chavez was unable to complete the program through no fault of his own.

In this unique situation, the government recommends a sentence of 32 months—approximately 50% of the low end of the guidelines range of 63-78 months. He has already served 3 months in custody, so the remaining time equates to approximately 24 months with good time credit. Based on the need for the sentence to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, and to promote respect for the law, the government submits that 32 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. §3553(a).

UNITED STATES' SENTENCING MEMORANDUM   1
3:23-CR-00057-JSC

## II. PROCEDURAL HISTORY

On February 15, 2023, the defendant was charged with one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Dkt. 1. He was arrested on March 2, 2023, and spent approximately three months in custody before being released on June 7, 2023. Chavez pled open to the sole count on September 27, 2023. Dkts. 46, 47. He entered CAP on January 4, 2024, and participated for approximately eight months (from January 4 to August 20, and again from November 28 to December 19) until a significant neck injury incurred in a car accident on July 28 left him unable to continue in the program. PSR ¶ 6. His sentencing is scheduled for September 24, 2025. Dkt. 72.

## III. OFFENSE CONDUCT

On July 31, 2022, Chavez caused a multi-car hit-and-run collision in San Francisco's Mission district. PSR ¶ 10. He left the vehicle (his girlfriend's) at the scene and fled on foot. While fleeing, a witness to the incident chased after him; Chavez brandished a firearm and threatened the witness to get him to stop the pursuit. *Id.* He was on post-release community supervision at the time. *Id.*

On December 8, 2022, as the San Francisco Police Department was preparing to execute a search warrant of his residence (shared with his girlfriend), police officers conducting pre-execution surveillance saw Chavez near the area of Sixth and Market streets. They searched him and found a firearm (a .40 caliber Glock 27 with an extended fifteen round magazine with thirteen .40 caliber Winchester bullets) and a housekey for his apartment in a largely empty red satchel bag hanging from his shoulder. *Id.* ¶ 11. Based on the serial number, law enforcement later determined that the firearm was stolen out of Stockton, CA. *Id.* Using the housekey, officers entered his residence and located three baggies of a substance that later tested positive for cocaine (totaling 35.7 grams) and one Smith and Wesson .40 caliber unfired cartridge. *Id.*

## IV. SENTENCING GUIDELINES CALCULATION

The government agrees with a base offense level of 20, plus 2 points for having a stolen firearm, minus 3 points for acceptance of responsibility, resulting in a total offense level of 19. *Id.* ¶ 25. The government agrees that Chavez is in Criminal History Category VI. *Id.* ¶ 43. Together, his advisory guidelines range is 63-78 months. There is no mandatory minimum sentence.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need for the sentence to afford adequate deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a sentence of 32 months' imprisonment. This recommendation, representing approximately 50% of the low end of the guidelines range, balances both his significant criminal history and the aggravating facts from the instant offense, as well as his efforts in CAP (which he did not complete due to factors outside of his control).

*a. Extensive History of Firearms and Violence*

Chavez's instant offense is not merely being a felon and passively possessing a firearm and ammunition. On the day of his arrest, officers found him on a street corner carrying a load Glock 27 with an extended magazine. When they searched his residence, they found 35.7 grams of cocaine. All of this resulted from a hit-and-run, which Chavez caused and during which Chavez brandished a firearm at an

innocent bystander who tried to stop him from fleeing the scene. What's more, he was on post-release community supervision at the time.

While Chavez's extensive criminal history is already incorporated into his criminal history category (VI), some of the facts from those prior convictions bear mentioning because they resemble the facts in the instant offense. They include possession of firearms in September 2005, November 2012, and June 2016. PSR ¶¶ 33, 37. They include possession of drugs in April 2005, September 2005, June 2007, and August 2017. *Id.* ¶¶ 30, 32, 34, 39. They include acts or threats of violence in February 2004 (punching a man), July 2005 (punching a woman in the face and saying "I'll kick your fucking bitch ass"), November 2012 (pointing a firearm at two male victims), June 2016 (brandishing a firearm), and December 2019 (battery on a prisoner). *Id.* ¶¶ 28, 31, 37, 38, 40. They include numerous violations of parole. *Id.* ¶¶ 33, 37. And those are just the convictions. There are numerous arrests with a similar pattern of firearms possession and/or violence. *See, e.g.*, *id.* ¶¶ 44, 46, 47, 53, 54, 55.

This history is not atypical for CAP participants who are, by definition, high-risk. But the fact that he continued the same pattern into 2022 at the age of 37 is still an important consideration.

    *b. Participation in CAP and Serious Injury*

Chavez's participation in CAP for approximately eight months was rocky—again, not uncommon for the typical CAP participant. On the one hand, he failed numerous drug tests and missed multiple treatment sessions. *See id.* ¶¶ 5, 7, 8. He failed a drug test as recently as six weeks prior to his accident, *see id.* ¶ 5, and missed alcohol tests as recently as one week prior to his accident, *see id.* ¶ 8. On the other hand, Chavez successfully completed residential treatment at Ms. Shirliz and has a positive letter of recommendation from that program—not an easy task for someone who reportedly consumed a large amount of alcohol on a daily basis up until his arrest. *See id.* ¶¶ 79, 81. His sobriety deserves praise.

Ultimately, Chavez did not complete CAP because a car accident, where he was merely a passenger and not at fault, left him severely injured and unable to live a normal life, work, or even play with his children. He then suffered another head injury when he was assaulted on a city bus. The government understands that his medical condition is improving but he has a long road ahead. Hopefully, he recovers as quickly as possible.

## VII. CONCLUSION

The government recommends a sentence of 32 months. He has already served 3 months in custody, so the remaining time equates to approximately 24 months with good time credit. This sentence balances the aggravating facts of the instant offense and his extensive criminal history on the one hand with his participation in CAP and his medical situation on the other. It fairly considers the progress he made during his eight months on CAP and represents a substantial 50% discount off of the guidelines.

DATED: September 17, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 */s/ George O. Hageman*
GEORGE O. HAGEMAN
Assistant United States Attorney